## CROWELL et al. v. FEDERAL RESERVE BANK OF DALLAS, TEX., et al.

(Circuit Court of Appeals, Fifth Circuit. March 16, 1926.)

No. 4692.

1. Banks and banking ⊕288½, New, vol. 11A Key-No. Series—Advance by reserve bank to member bank on condition that it receive as security an assessment of shareholders' liability held a loan and not a donation.

A Federal Reserve Bank advanced $500,000 to a member national bank capitalized for that amount, and which was in failing condition, on condition that it receive as security an assessment in full of the shareholders' liability, which was made, and also a lien on all other assets for any amount the assessment failed to repay. *Held*, on the evidence, that the advance was a loan and not a donation.

2. Equity ⊕377—It is not error for court of equity to refuse to call a jury where evidence is undisputed.

It is not error for a court of equity to refuse to summon a jury to pass on a question of fact, where, on the undisputed evidence, it would be its duty to direct a verdict.

3. Bills and notes ⊕434—Voluntary payment of collateral note not recoverable from pledgee.

The maker of a note to a bank, which pledged it as collateral to a reserve bank, even though it was nonnegotiable, is not entitled to recover the amount from the reserve bank,

where he paid it to that bank voluntarily before maturity.

**4. Banks and banking ☞288—Claim of depositor in insolvent bank must be presented for allowance to receiver before suit thereon.**

A depositor in an insolvent national bank cannot maintain a suit in equity to establish his claim without first presenting it to the receiver for allowance.

Appeal from the District Court of the United States for the Western District of Texas; Charles A. Boynton, Judge.

Suit in equity by Douglas C. Crowell and others against the Federal Reserve Bank of Dallas, Tex., and others. From a decree dismissing the bill, complainants appeal. Affirmed.

R. A. D. Morton, of El Paso, Tex. (Dyer & Morton, of El Paso, Tex., on the brief), for appellants.

J. G. McGrady and A. H. Culwell, both of El Paso, Tex. (Turney, Burges, Culwell, Holliday & Pollard and Wm. H. Burges, all of El Paso, Tex., Charles C. Huff and Ethan B. Stroud, Jr., both of Dallas, Tex., and Lea, McGrady, Thomason & Edwards, of El Paso, Tex., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. On Saturday, January 26, 1924, bank examiners completed an examination into the condition of the City National Bank of El Paso, Tex., and notified its officers that the bank would not be allowed to open its doors on the following Monday, unless by that time it should have charged off $800,000 in paper held as assets which the examiners considered to be worthless. On the following night a meeting of citizens was held for the purpose of assisting in raising $800,000 in money, so as to enable the bank to continue in business. These citizens subscribed to various amounts aggregating $300,000, and signed an agreement to accept for their subscriptions notes in equal amounts which had been rejected by the bank examiners. It was provided by the subscription list which they signed that their subscriptions were subject to an agreement by the Federal Reserve Bank to take and pay for at par $500,000 of the least valuable of the rejected notes and assets held by the bank. The governor of the Reserve Bank was present at the place where the meeting of the citizens was held, and stated to those who approached him that the Reserve Bank could not make a donation, and that under no circumstances would he accept and pay for worthless assets, but that he would consider making an advance for the Reserve Bank of $500,000, which was the amount of the capital stock of the El Paso bank, pending an assessment of 100 per cent. against the shareholders. A resolution was adopted by the directors of the El Paso bank accepting an advance in that amount, agreeing to make the assessment suggested, and providing, in the event it should not be made, or the El Paso bank should suspend business before it was completed, and the amount necessary to take up the loan raised, that the Reserve Bank should have a first and prior lien on all the assets of the El Paso bank to secure repayment. On Monday morning, January 28, the $300,000 subscribed by the citizens and the $500,000 advanced by the Reserve Bank were deposited in the El Paso bank, and the questionable assets were taken out and turned over to a committee for distribution. The El Paso bank closed its doors on May 6, 1924, and in November, 1924, its receiver, with the approval of the Comptroller, and the Reserve Bank entered into a contract of settlement, in which the advance of $500,000 by the Reserve Bank was recognized as a loan.

Douglas C. Crowell subscribed and paid $2,000 at the citizens' meeting in January. He was not a shareholder in the El Paso bank, but was a depositor. At the time of that bank's failure in May he had on deposit with it $19,473.68. He had borrowed on his notes before the failure $23,500. It is admitted that all of these notes were negotiable, except one for $8,750, which it is claimed was nonnegotiable, because, though it was made payable to order six months after date, it pledged as collateral certain stock, with the right of the payee to call for additional security, should the stock decline, in which event it became payable on demand. All these notes, including the one last mentioned, were pledged as collateral security by the El Paso bank before its failure to the Reserve Bank. After the failure, the Reserve Bank notified Crowell that it was the holder of the notes, and he paid the $8,750 note before it was due. The representative of the Reserve Bank stated to him that it could grant a short extension of time, and did not threaten to sue or to exercise the right to sell the stock pledged as collateral. Crowell stated that he was paying his notes under protest, and demanded that, when the Reserve Bank should be paid in full on paper discounted with it by the El Paso bank, his proportion of any surplus in collateral notes or cash should be delivered to him, and not turned over to the

receiver. At the date of the final hearing the receiver was still indebted to the Reserve Bank to the extent of about $75,000, for which the Reserve Bank held collateral notes amounting to $37,500 and rediscounted notes amounting to approximately $178,000.

Crowell filed a bill to set aside the contract of settlement between the receiver and the Reserve Bank on the ground that the Reserve Bank was estopped to claim that the $500,000 advanced by it in January was a loan, because the citizens who donated $300,000 did so on condition that the Reserve Bank would make a donation of $500,000. The bill also prays that Crowell be decreed to have the right to set off his deposit against all his notes, or at least against the note for $8,750, which he claims to be nonnegotiable. The District Court, after hearing the evidence, dismissed the bill, but without prejudice.

[1] The evidence shows without conflict that the Reserve Bank did not agree to make a donation, and it becomes unnecessary to decide whether it had the right or power to do so. The most that can be claimed by appellant is that some of the citizens who made donations were led to believe by others of their number or by officials of the El Paso bank that the Reserve Bank would also make a donation of $500,000. It is very clear—in fact, it is alleged in the bill—that the governor of the Reserve Bank would deposit the amount requested of him only upon condition that he receive as security an assessment in full of the shareholders' liability. Nor is there any dispute that the Reserve Bank refused to make a deposit until after the passage of a resolution by the directors of the El Paso bank pledging other assets in the event of a failure to secure by stock assessment the full amount advanced. It was only upon the passage of that resolution that the Reserve Bank undertook to bind itself to do anything. All previous suggestions and conversations were mere preliminary negotiations, and it was thoroughly understood all the while by those who dealt with the governor of the Federal Reserve Bank that he would under no circumstances make a donation, and that if he made a loan it would have to be secured. The question is not whether the liability of the shareholders could be pledged as security but whether a loan was made.

The evidence without conflict answers that question in the affirmative.

[2] It is contended that the trial court should have granted appellant's request to call a jury to pass upon the question whether the amount advanced was a loan or a donation. But clearly there was no error in refusing to summon a jury, as the court would have been obliged to direct them to find against appellant on the undisputed facts. It follows that appellant must fail on his principal claim of estoppel. His claim of set-off is premature. The El Paso bank was still indebted to the Reserve Bank at the date of the final hearing, and it therefore had not been determined what amount, if any, would be realized from collateral notes and available to the receiver.

[3] It is contended, however, that the Reserve Bank should be compelled to pay over either to appellant or to the receiver proceeds of the $8,750 note on the ground that it was nonnegotiable. Whether that is true or not does not seem to have been settled in the state of Texas, and we find it unnecessary to decide, because appellant made payment of that note voluntarily; he even paid it before it was due, and was not induced to do so by any action threatened by the Reserve Bank to sell or resort to the collateral pledged to secure payment of the note. The doctrine of marshaling assets has no application, for this is not a case of a junior and senior lienholder. Appellant has no lien, and the Reserve Bank has the right to subject any security it holds to the satisfaction of its debt.

[4] The suggestion is finally made that it was error to dismiss the bill, because, having taken jurisdiction, the court should have proceeded to establish appellant's claim to his deposit. It is not averred in the bill that appellant had ever presented his claim, or that it had been disallowed by the receiver. It is to be assumed that the claim would be allowed upon presentation. It would be intolerable to allow every depositor to come into court to establish his claim without first having made demand, or showing that it had been disallowed. As the dismissal of the bill was without prejudice, appellant is left free to assert in appropriate proceedings any rights he may have against the receiver.

The decree is affirmed.